IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>JOHN HARVEY,<br><br>　　　　　　　Defendant. | 4:20CR3095<br><br>FINDINGS AND RECOMMENDATION |

This case is before the court on the Motion to Dismiss filed by Defendant John Harvey ("Defendant"), (Filing No. 53). After thorough review of the briefing, record, and relevant law, the court finds that the motion should be denied.

BACKGROUND

On September 24, 2020, Defendant was charged in a one count indictment for possession of a firearm by a prohibited person, in violation of 18 U.S. C. § 922(g)(4). (Filing No. 1).

Prior to the indictment, on August 28, 2019, Defendant was contacted by officers from the Lincoln Police Department following a dispute with his wife while on a shopping trip. When police arrived at the scene, Defendant made suicidal comments and was experiencing chest pain. (Filing No. 54-2). After evaluating the situation, a responding officer completed a certificate of emergency admittance[1] and Defendant was admitted to Mary Lanning Hospital in Hastings, Nebraska. (Filing No. 54-2).

---
[1] See Neb. Rev. Stat. § 71-919.

On August 30, 2019, in light of the August 28 incident, the Lancaster County Attorney filed a petition ("the Petition") pursuant to Neb. Rev. Stat. § 71-901 *et. seq.* with the Mental Health Board of Lancaster County, Nebraska ("the Board"). (Filing No. 54-3). The Petition asked the Board to schedule a hearing to determine whether Defendant is a "mentally ill dangerous person" and to further determine "whether voluntary hospitalization or other treatment alternatives less restrictive of the subject's liberty than a Mental Health Board ordered treatment disposition are available or would suffice to prevent the harm described in [Neb. Rev. Stat. §] 71-908." (Filing No. 54-3 at CM/ECF p. 2).

On September 3, 2019, the Board convened a hearing pursuant to the Petition. Defendant appeared for the hearing (along with his legal counsel), and the Lancaster County Attorney's Office appeared on behalf of the State of Nebraska. (Filing No. 54-6). The parties represented to the Board that they had reached a stipulation and that Defendant would stipulate to a finding that he was mentally ill and dangerous and represented a substantial risk of harm to himself. (Filing No. 54-6 at CM/ECF pp. 5-6). The parties further stipulated that the least restrictive treatment was a Board-ordered outpatient commitment to Lutheran Family Services. (Filing No. 54-6 at CM/ECF p. 5). Following the hearing, the Board issued an order adopting the terms of the parties' stipulation, and ordering Defendant be "placed in the custody of Lutheran Family Services for medication management and individual therapy, [and] for appropriate outpatient treatment." (Filing No. 54-4).

On March 10, 2020, Defendant was again contacted by Lincoln Police following a report of domestic assault that allegedly occurred on March 9, 2020. In the incident report, the responding officers indicate that Defendant was "yelling," and making suicidal comments. Defendant engaged in a short stand-off with police

2

officers but was eventually taken into custody. During the stand-off, Defendant had a gun within his immediate reach, apparently holding it in his lap. ([Filing No. 62-1](#)). After he was taken into custody, he was transported to Bryan West Hospital, and the gun was placed into evidence by Lincoln Police. ([Filing No. 62-1 at CM/ECF p. 2](#)).

Following the incident and Defendant's admission to Bryan West, Lincoln Police completed another certificate of emergency admittance, and Defendant was thereafter admitted to The Bridge Behavioral Health treatment facility. ([Filing No. 62-2](#)). The certificate describes the March 10, 2020 incident as follows:

> John was contacted at home during a belated domestic assault investigation. John was contacted with a loaded handgun in his lap. John stated there was a magazine in the gun, but had one round in the chamber for himself. Officers heard a noise that sounded like a trigger pull approx. 3 different times. John was eventually taken into custody and said, 'I should have shot myself,' 'I can't hang on anymore,' and 'first step to successful death by gun is get drunk.'

([Filing No. 62-2 at CM/ECF p. 2](#)). Defendant was arrested on March 13, 2020 related to the March 9-10, 2020 domestic assault allegation and was booked into the Lancaster County Jail. ([Filing No. 62-3](#)). The federal indictment pursuant to § 922(g)(4) followed on September 24, 2020. ([Filing No. 1](#)).

Defendant now moves to dismiss the federal indictment. ([Filing No. 53](#)). First, Defendant alleges that the indictment fails as a matter of law because, based on the undisputed facts: (1) Defendant was never "adjudicated as a mental defective;" and (2) Defendant was not "committed to a mental institution" within the meaning of the applicable federal law and regulations. Defendant further argues the indictment violates both the Second Amendment and Due Process Clause of the United States Constitution.

ANALYSIS

When determining whether an indictment states a legally sufficient basis for criminal liability, the court will "accept the allegations stated in the indictment as true…and ask whether they can form the basis of the charged offense." United States v. Hansmeier, 988 F.3d 428, 436 (8th Cir. 2021). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Steffen, 687 F.3d 1104, 1109 (8th Cir. 2012) (quoting United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir.1993)). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." United States v. Hayes, 574 F.3d 460, 472 (8th Cir. 2009) (quoting United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008))).

In the instant case, Defendant advocates for a narrow exception to the above standard. Defendant argues that the court is permitted to look outside the indictment when a criminal case is premised on "a small set of undisputed facts that even taken as wholly true fail to state an offense" as a matter of law. (Filing No. 53 at CM/ECF p. 3) (citing United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993)). Defendant contends that pretrial consideration of such evidence is proper in such cases "as a measure of judicial economy" and to resolve legal issues. (Filing No. 53 at CM/ECF p. 3). Defendant asks the court to apply the foregoing exception and to evaluate whether Defendant was, as a matter of law, "adjudicated as a mental defective" or "committed to a mental institution" within the meaning of § 922(g)(4).

4

The government argues that it should not be required to present evidence or substantively defend the indictment at this stage of the proceeding. (Filing No. 62 at CM/ECF p. 6). The government asserts:

> This court need not, and should not, consider Harvey's fact-specific arguments (i.e., whether he is a mental defective or if the statute is unconstitutional as–applied to him) as it is procedurally premature to do so. Federal Criminal Procedure does not allow for pretrial determination of the sufficiency of the United States' evidence on a motion to dismiss.

(Filing No. 62 at CM/ECF p. 6). It does not appear to the court that the Eighth Circuit has ever explicitly stated that the court can, in some cases, consider fact-specific issues on a pretrial motion to dismiss an indictment. But see United States v. Dorsch, 363 F.3d 784 (8th Cir.2004) (implying, but not specifically holding, that district court may consider on a pretrial motion to dismiss the facts underlying government's contention that a criminal defendant was involuntarily committed). And other Eighth Circuit cases cut specifically away from adoption of such a standard:

> In civil cases, of course, the summary judgment procedures contemplated by Federal Rule of Civil Procedure 56 may be utilized to test, pretrial, the sufficiency of the evidence to establish triable issues of fact; but there is no corollary in criminal cases. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29[.]

United States v. Ferro, 252 F.3d 964, 968 (8th Cir.2001).  While there does not appear to be a definitive standard in this circuit, other federal circuits have found that questions regarding whether a subject has been "adjudicated as a mental defective" or "committed to a mental institution" with the meaning of Section 922(g) are questions of law, properly analyzed on pretrial motions to dismiss.  United States v. McLinn, 896 F.3d 1152, 1156 (10th Cir. 2018); United States v. McIlwain,

5

772 F.3d 688, 693 (11th Cir. 2014); <u>but see</u> United States v. Easley, 2020 WL 1310486, at *2-3 (W.D. Ky. March 19, 2020) (determining that motion to dismiss was not proper vehicle to determine whether defendant was "mentally defective").

Given the unsettled law, the court could arguably adopt either approach in this case. However, having considered both, the court finds that the indictment is legally sufficient on either advocated standard. In the interest of full resolution of this matter, the court will analyze the indictment under both parties' proffered legal frameworks. As more thoroughly described hereinbelow, the government will prevail on either standard.

   I.   Government's Standard (Face of the Indictment Rule)

The indictment charges Defendant as follows:

> On, about, or between September 3, 2019, and March 10, 2020, in the District of Nebraska, Defendant JOHN HARVEY; knowing that he had been adjudicated as a mental defective, or knowing that he had been committed to a mental institution; did knowingly possess a firearm, that is a Smith & Wesson 9 mm pistol, which had been shipped and transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(4) and 924(a)(2).

(Filing No. 1). Here, the indictment tracks the federal statute at issue (to wit, 18 U.S.C. §922(g)(4) ("It shall be unlawful for any person…who has been adjudicated as a mental defective or who has been committed to a mental institution…to possess…any firearm.")). Typically, an indictment that tracks the statutory language is sufficient. United States v. Sewell, 513 F.3d 820, 821 (8th Cir.2008). And based on a review of the information contained within the four corners of the indictment, it "contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges

6

sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." Steffen, 687 F.3d 1104, 1109 (8th Cir. 2012).

A criminal defendant has a right to present any lawful defense available in response to the government's effort to prove his guilt beyond a reasonable doubt. Hansmeier, 988 F.3d at 438. But a defendant's possible defenses are not relevant to whether the face of the indictment itself properly states the basis for the charged offenses. Id. In this case, when looking solely at the indictment's face and taking the allegations as true, it is legally sufficient.

    II.    Defendant's Standard (Consideration of Extrinsic Evidence)

As noted above, Defendant asks the court to look beyond the indictment to consider the evidence surrounding whether Defendant was "adjudicated as a mental defective" and whether he was "committed to a mental institution" as a matter of law and within the meaning of Section 922(g)(4). Defendant claims that the evidence supports neither of the foregoing. Defendant likewise claims that the statute, as applied to him, violates the Due Process Clause and the Second Amendment.

    a.  "Adjudicated as a Mental Defective"

Relying on United States v. Hansel, 474 F.2d 1120 (8th Cir.1973), Defendant argues he was never "adjudicated as a mental defective" within the meaning of § 922(g)(4). Defendant states "adjudicated as a mental defective" requires a finding that the subject "never possessed a normal degree of intellectual capacity." (Filing No. 53 at CM/ECF p. 5) (emphasis added). Defendant argues that, even if the court finds that the Board adjudicated Defendant to be currently "mentally ill and dangerous" within the meaning of Neb. Rev. Stat. § 71-908, that

determination is insufficient to establish that he was "adjudicated as a mental defective" within the definition proffered in Hansel.

After the Hansel opinion was entered, the Bureau of Alcohol, Tobacco and Firearms ("ATF"), 27 C.F.R. 478.11(a) changed or clarified the definition of "adjudicated as a mental defective." Under the current regulation, "adjudicated as a mental defective" is defined as:

> (a) A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition or disease:
>
> (1) Is a danger to himself or other; or
>
> (2) Lacks the mental capacity to contract or manage his own affairs.

27 C.F.R. 478.11(a). Based on the principles of administrative deference, the definition within the federal regulation should control. See 18 U.S.C. § 926. Moreover, the language of Hansel itself indicates that the court was tasked with defining the term because no "revealing guides as to the intent of Congress" existed. Hansel, 474 F.2d at 1123. That landscape has changed in the nearly 50 years since Hansel was decided. The court now has a definition to apply – stated in a federal regulation and promulgated by the agency to which Congress delegated authority to make such regulations.[2]

---

[2] Even if Hansel was controlling, it is distinguishable. The Hansel defendant was admitted to a mental hospital for observation and the superintendent of the mental hospital then found, after observation, that the defendant had no serious mental illness. Thus, the Eighth Circuit did not consider the term in the context of a defendant who had been formally adjudicated "mentally ill and dangerous," as was the case on the instant facts.

The Nebraska statutory definition for "mentally ill and dangerous" clearly meets, if not exceeds, the ATF definition for "adjudicated as a mental defective" outlined above. Under Nebraska law:

> Mentally ill and dangerous person means a person who is mentally ill or substance dependent and because of such mental illness or substance dependence presents:
>
> (1) A substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm; or
>
> (2) A substantial risk of serious harm to himself or herself within the near future as manifested by evidence of recent attempts at, or threats of, suicide or serious bodily harm or evidence of inability to provide for his or her basic human needs, including food, clothing, shelter, essential medical care, or personal safety.

Neb. Rev. Stat. § 71-908.

During the 2019 hearing before the Mental Health Board, Defendant stipulated that he was mentally ill and dangerous and posed a substantial risk of serious harm to himself. (Filing No. 54-6). The determination was adopted by an authoritative body (The Mental Health Board for Lancaster County, Nebraska) in a binding order. (Filing No. 54-4). There is evidence to support the government's allegation that Defendant was previously "adjudicated as a mental defective."[3]

---

[3] The court has weighed the facts and evidence surrounding the adjudication as "preliminary findings of fact necessary to decide the legal questions presented by [a motion to dismiss]." United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (quotations omitted). In doing so, the court notes that it has only addressed evidence that is wholly necessary to resolution of a legal question and will not, in any general sense, evaluate the sufficiency of the government's evidence at this stage.

b. "Committed to a Mental Institution"

Section 922(g)(4) makes it unlawful to possess a firearm for anyone who "has been adjudicated as a mental defective" or "who has been committed to a mental institution." 18 U.S.C. § 922(g)(4) (emphasis added). Even if the defendant was not "adjudicated as a mental defective," the government can show that he was "committed to a mental institution" within the meaning of federal law.

The parties agree that the relevant definition of "committed to a mental institution" is as follows:

> A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.

27 C.F.R. 478.11. Based on the evidence before the court, all the strictures of Nebraska law were followed in the commitment process. A petition was filed by the relevant county attorney's office. (Filing No. 54-3). A hearing was convened before the relevant mental health board. (Filing No. 54-6). Defendant appeared at the hearing with the representation of counsel. Defendant stipulated, on the record, that he was mentally ill and dangerous and that he represented a substantial risk of harm to himself. (Filing No. 54-6). And that stipulation was adopted as evidenced by the Board's formal order finding, by clear and convincing evidence:

> Subject is a mentally ill and dangerous person and neither voluntary hospitalization nor other treatment alternatives less restrictive of the Subject's liberty than a Mental Health Board ordered treatment disposition would suffice to prevent the substantial risk of harm as described in [Neb. Rev. Stat. §] 71-908.

(Filing No. 54-4 at CM/ECF p. 1). The order "placed [Defendant] in the custody of Lutheran Family Services" for outpatient treatment for both "medication management and individual therapy." (Filing No. 54-4 at CM/ECF p. 1).

Defendant contends that the foregoing was not a formal commitment, arguing that Defendant "voluntarily" agreed to attend treatment. That contention, however, is irreconcilable with the record. The Board specifically found that voluntary treatment "would not suffice to prevent the substantial risk of harm" the defendant could pose to himself. (Filing No. 54-4 at CM/ECF p. 1). Defendant was legally obligated to attend the outpatient treatment, regardless whether he voluntarily stipulated to that obligation.

Defendant argues that his treatment should be considered akin to the type of "observation" that is specifically excluded from the definition of "formal commitment." (Filing No. 53 at CM/ECF p. 7). That argument is also unavailing. By the plain terms of the Board's order, Defendant's treatment was neither voluntary nor for the purpose of observation.

The government's evidence supports a finding that Defendant's commitment to outpatient treatment at Lutheran Family Services[4] constitutes a formal commitment under the relevant federal law and regulations. Cf. United States v. B.H., 466 F. Supp. 2d 1139, 1147 (N.D. Iowa 2006) (analyzing Section 922(g)(4) in a civil case and finding "that outpatient treatment may constitute commitment to a mental institution" within the meaning of the statute); see also United States v.

---

[4] The relevant definition of "mental institution" includes "mental health facilities, mental hospitals, sanitariums, psychiatric facilities, and other facilities that provide diagnoses by licensed professionals of mental retardation or mental illness, including a psychiatric ward in a general hospital." 27 C.F.R. 478.11(a) (emphasis added). Lutheran Family Services is a mental institution within the regulatory definition.

McMichael, 350 F. Supp. 3d 647, 657, fn. 9 (W.D. Mich. 2018) (noting that "the statute only requires commitment to a mental institution, not commitment in a mental institution) (emphasis in original).[5]

    c. Due Process Clause

Defendant argues that the indictment violates due process because he had no knowledge that he was committing a federal crime. Specifically, Defendant claims that he did not know and was not sufficiently warned that the proceedings and adjudication before the Board constituted an involuntary commitment and a resultant firearm disability. (Filing No. 53 at CM/ECF p. 8).

Recently, in Rehaif v. United States, 139 S.Ct. 2191, 2200 (2019), the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Id. Applying Rehaif, so long as the government proves that Defendant (1) knew he possessed a gun during the relevant period; and (2) knew he had been adjudicated as a mental defective or committed to a mental institution by the Board, the government has established sufficient knowledge for liability under Section 922(g). Rehaif, 139 S.Ct. at 2200.

While the court was willing to look beyond the indictment to address the legal questions discussed above, evaluating Defendant's knowledge is beyond the

---

[5] Defendant notes that the Board dismissed the order of commitment on February 4, 2020. (Filing No. 53 at CM/ECF p. 2). That has no effect on the sufficiency of the indictment. Section 922(g)(4) does not condition prohibited person status on whether a person has an active Board-ordered commitment, and Defendant cites no authority indicating the existence of such a condition. Moreover, the indictment incorporates any violation "[o]n, about, or between September 3, 2019, and March 10, 2020" and during the vast majority of the relevant period, the commitment order was in full force.

court's purview on a pretrial motion. The court may not "approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be." Ferro, 252 F.3d at 968 (8th Cir. 2001) (quoting United States v. DeLaurentis, 230 F.3d 659, 661 (3d Cir. 2000)). Resolving questions related to the factual basis for Defendant's knowledge clearly asks the court to prematurely weigh disputed evidence rather than resolve a question of law. Put differently, the court was willing to evaluate the <u>undisputed</u> documentary evidence related to the Board proceedings in order to evaluate its effect as a matter of law. At the pretrial stage of a criminal case, the court cannot weigh disputed evidence and/or make credibility determinations in order to decide what Defendant "knew" and when he knew it.

The court has considered the indictment in the context of <u>Rehaif</u> and finds that the face of the indictment states the proper formation of Section 922(g)(4)'s knowledge requirements. Because the indictment sufficiently states an offense, it will survive Defendant's motion to dismiss. See Hansmeier, 988 F.3d at 436. Questions as to the sufficiently of the government's evidence related to Defendant's knowledge should be left to the trier of fact and/or resolved on a proper Rule 29 motion.

    d. Second Amendment

Finally, Defendant argues that Section 922(g)(4) violates the Second Amendment as-applied to the facts of his case. As best the court can tell from the briefing, Defendant argues that § 922(g)(4) is being unconstitutionally applied to him because he is not a prohibited person within the meaning of the statute and/or he did not know he was a prohibited person within the meaning of the statute.

The right secured by the Second Amendment is not unlimited. D.C. v. Heller, 554 U.S. 570, 626 (2008). Regulatory measures which prohibit the mentally ill from possessing weapons are historically based limitations on the Second Amendment rights and presumptively lawful. Heller, 554 U.S. at 626; see also, Johnson, 2016 WL 614727 at *6 (noting that, on any level of constitutional scrutiny, § 922(g)(4)'s prohibition on the possession of firearms by individuals "adjudicated as a mental defective" or who have been "committed to a mental institution," is constitutionally valid, as it furthers the compelling interests of protecting society from violent crime and preventing suicides). As previously explained, the indictment cannot be dismissed for lack of evidence that Defendant was "adjudicated as a mental defective" or "committed to a mental institution." And the issue of whether Defendant knew he belonged to a category of persons who cannot possess a gun must be decided by a jury, not by pretrial motion. Moreover, there can be no argument that the length of any ban on possession was unconstitutionally prohibitive: The indictment alleges Defendant unlawfully possessed a firearm less than seven months after the Mental Health Board entered its ruling.

Defendant's Second Amendment as-applied challenge seeking dismissal of the indictment should be denied.

III. Conclusion

Defendant's motion to dismiss must be denied. The indictment is facially valid. And, to the extent Defendant's motion raises legal questions properly considered by the court at this preliminary stage, he has not articulated any basis on which the court may conclude that the indictment is invalid as a matter of law. The court finds that the legal issues addressed in this order did not require a hearing prior to proper consideration; therefore, Defendant's request for a hearing is also denied.

IT THEREFORE IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), Defendant's Motion to Dismiss, (Filing No. 53) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 22nd day of October, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge