IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:20-CR-3095 |
| vs. | MEMORANDUM AND ORDER |
| JOHN HARVEY, | |
| Defendant. | |

This matter is before the Court on the defendant's objection (filing 71) to the Magistrate Judge's findings and recommendation (filing 64) recommending denial of the defendant's motion to dismiss (filing 53). After careful consideration and *de novo* review, *see* 28 U.S.C. § 636(b), the Court will grant the defendant's motion to dismiss.

The Court's decision is not about who should, or should not, be permitted to have a firearm under the Second Amendment. While that was one issue raised by the defendant, the Court does not decide it. Rather, the questions that dispose of this case for the Court involve interpreting a federal statute: Who does the law already prohibit from having a firearm? How clearly does it notify those people that they're no longer allowed to have the firearms they already own? And most importantly, who should be sent to jail for having a firearm that the government now says they weren't allowed to have?

The underlying facts here are set out in the Magistrate Judge's findings and recommendation and are not meaningfully disputed. *See* filing 64 at 1-3. Rather, the parties disagree about the legal consequences of those facts and whether they describe the offense with which the defendant is charged, a violation of 18 U.S.C. § 922(g)(4): "It shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a

mental institution . . . to possess in or affecting commerce, any firearm or ammunition . . . ." Specifically, the defendant contends that:

1.      Given the undisputed facts, the defendant had neither been "adjudicated as a mental defective" nor "committed to a mental institution" within the meaning of § 922(g)(4);

2.      The defendant could not have known that he fell within either of those categories, meaning that he could not have had the *mens rea* necessary to commit the offense; and

3.      Section 922(g)(4) violates the Second Amendment as applied to the defendant.

*See* filing 71 at 6-25.[1] The Court agrees with the defendant that he has neither been "adjudicated as a mental defective" nor been "committed to a mental institution" within the meaning of § 922(g)(4).

But as a threshold matter, the parties disagree about whether that question is properly raised by a pretrial motion to dismiss. The government argues that the question on a motion to dismiss is simply whether the allegations of the indictment are sufficient. Filing 77 at 3. And of course, they are, as they track the statutory language. *See* filing 1. The defendant argues, on the other hand, that the sufficiency of undisputed facts may be tested on a motion to dismiss. Filing 71 at 17.

_____

[1] The defendant actually advances his constitutional argument first. *See* filing 71 at 6. But the Court cannot consider the constitutionality of the statute before construing it, *see Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018), and the Court should consider non-constitutional ways to dispose of a case before deciding constitutional questions, *see Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 80-81 (2009).

The Court agrees with the defendant. Fed. R. Crim. P. 12(b)(1) permits the defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." And a motion is capable of pretrial determination if trial of the facts surrounding commission of the alleged offense would be of no assistance in determining the validity of the motion. *United States v. Turner*, 842 F.3d 602, 604 (8th Cir. 2016).

That appears to be the situation here: whether the uncontested facts establish the status required by § 922(g)(4) is a question of law. *See United States v. Whiton*, 48 F.3d 356, 358 (8th Cir. 1995); *see also United States v. Dortch*, 363 F.3d 784, 785 (8th Cir. 2004); *United States v. Bartley*, 9 F.4th 1128, 1131 (9th Cir. 2021); *United States v. McLinn*, 896 F.3d 1152, 1156 (10th Cir. 2018) (collecting cases). Accordingly, in the absence of a factual controversy, it is appropriate to dispose of the issue at this point. *See United States v. Covington*, 395 U.S. 57, 60-61 (1969).

(a) Adjudicated as a Mental Defective

To begin with, the Court agrees with the defendant that the undisputed facts do not establish adjudication as a "mental defective" within the meaning of § 922(g)(4). The Eighth Circuit has explained that the (inartful) term "mental defective" as used in § 922(g)(4) "does not include mental illness." *United States v. Hansel*, 474 F.2d 1120, 1123 (8th Cir. 1973). The Eighth Circuit explained, as a matter of statutory construction, that a "mental defective" is "a person who has never possessed a normal degree of intellectual capacity, whereas in an insane person faculties which were originally normal have been impaired by mental disease." *Id.* at 1124. And the defendant falls outside that definition.[2]

---

[2] The defendant also argues that he wasn't "adjudicated" within the meaning of the statute. Filing 71 at 19-20. The Court finds no merit to that argument. That he was "adjudicated"

The government's argument to the contrary, rather, rests on a definition promulgated by the Bureau of Alcohol, Tobacco, Firearms, and Explosives which provides that to be "adjudicated as a mental defective" requires only

> A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease:
>
> (1)    Is a danger to himself or to others; or
>
> (2)    Lacks the mental capacity to contract or manage his own affairs.

27 C.F.R. § 478.11(a). That comes closer to describing the defendant's situation. But the Court is not convinced that *Hansel* is so easily set aside. It may be true, as the government suggests, that the ATF regulation is a more modern, "better" definition. *See* filing 77 at 4. But the Eighth Circuit's decision in *Hansel* was quite plainly an exercise in statutory interpretation, and its holding—premised on the statutory text—is both clear and on point.

Of course, a regulation cannot contradict statutory text. *See Brown v. Gardner*, 513 U.S. 115, 122 (1994). And here, the Eighth Circuit has told us what this statutory text means. *See Hansel*, 474 F.2d at 1123-25. Perhaps the Court of Appeals should reconsider *Hansel*.[3] But this Court cannot. *See United States v. B.H.*, 466 F. Supp. 2d 1139, 1146-47 (N.D. Iowa 2006).

---

based on stipulated facts doesn't change the legal character of the adjudication: a petition was filed by the county attorney, and the mental health board entered an order that could have been (although it was not) appealed to the district court. That process, explained in detail below, is an "adjudication." *See* filing 54-3; filing 54-4.

[3] Or perhaps not: there's also much to commend the *Hansel* definition. For one thing, the ATF's definition of "adjudicated as a mental defective" would entirely subsume the definition of "committed to a mental institution." *See Jones v. United States*, 463 U.S. 354, 369 (due

(b) Committed to a Mental Institution

The defendant also argues that he wasn't "committed to a mental institution" within the meaning of § 922(g)(4). Again, the Court agrees.

> Section 922 does not define the phrase "committed to a mental institution." Regulations promulgated under § 922 define "committed to a mental institution" as "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority." 27 C.F.R. § 478.11. The regulations further specify that involuntary commitments are included within the definition, but persons in a mental institution for observation or on a voluntary basis are not within the purview of the statute.

Dortch, 363 F.3d at 785. And although the meaning of § 922(g)(4) is a question of federal law, the Court is guided by Nebraska law as to the meaning of "committed." *Id*.; Whiton, 48 F.3d at 358.

The defendant doesn't seem to dispute that for these purposes, Lutheran Family Services was a "mental institution." *See* filing 71 at 21-24. Rather, the argument hinges on the word "committed." While the defendant was adjudicated by the mental health board pursuant to a petition filed by the county attorney, what the mental health board ordered was involuntary *outpatient* treatment. *See* filing 54-4. The Court acknowledges that the language of the mental health board's order described this as "Board ordered

---

process in a civil commitment proceeding requires proof that the individual is mentally ill and dangerous). And that would run contrary to "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *See Mt. States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985). The ATF's definition would also presumptively strip anyone who's been in a temporary guardianship or conservatorship of their Second Amendment rights—a breadth which would create constitutional concerns.

outpatient commitment to Lutheran Family Services for medication management and individual therapy." Filing 54-4 at 1. But whether he was actually "committed" for these purposes requires a more careful—indeed, comprehensive—examination of the Nebraska Mental Health Commitment Act, Neb. Rev. Stat. § 71-901 *et seq.*

"The purpose of the Nebraska Mental Health Commitment Act is to provide for the treatment of persons who are mentally ill and dangerous." § 71-902. A "mentally ill and dangerous person" presents:

> (1) A substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm; or
>
> (2) A substantial risk of serious harm to himself or herself within the near future as manifested by evidence of recent attempts at, or threats of, suicide or serious bodily harm or evidence of inability to provide for his or her basic human needs, including food, clothing, shelter, essential medical care, or personal safety.

§ 71-908. The Act encourages voluntary treatment for mentally ill and dangerous people, but if that's not obtained then such persons shall be subject to involuntary custody or treatment after mental health board proceedings. *Id.* To that end, the Act creates mental health boards for each state district court judicial district. *See* § 71-915.

There are several ways for a person to end up in a medical facility and subject to proceedings under the Act. To begin with, a person may voluntarily apply for admission to a hospital or other treatment facility, but must be discharged within 48 hours of delivering a written request to a facility official unless action is taken under the Act to keep the person in custody. § 71-918. A

- 6 -

law enforcement officer who believes that someone is mentally ill and dangerous may cause that person to be taken into emergency protective custody and admitted to a medical facility, where they must be evaluated by a mental health professional within 36 hours. *See* § 71-919. And if that mental health professional finds that the person is mentally ill and dangerous, they certify that to the county attorney. § 71-920. Alternatively, any person who believes that someone else is mentally ill and dangerous may advise the county attorney, and the county attorney—if they concur that the person is mentally ill and dangerous and board-ordered treatment is necessary—is empowered to file a petition with the clerk of the district court to initiate mental health board proceedings. § 71-921.

The county attorney's petition may ask for emergency protective custody, in which case the district court or the chairperson of the mental health board may issue a warrant directing the county sheriff to take the subject of the petition into custody. § 71-922. Alternatively, a summons may issue. § 71-923. The mental health board then holds a hearing "to determine whether there is clear and convincing evidence that the subject is mentally ill and dangerous as alleged in the petition." § 71-924.[4]

---

[4] This is the point at which *Gallegos v. Dunning*, 764 N.W.2d 105 (Neb. 2009), becomes distinguishable. The Nebraska Supreme Court determined in that case that a subject had not been "committed" for purposes of § 922(g)(4) when the county attorney had filed a petition and the subject had been taken into custody, but no hearing was ever held on the petition. *Gallegos*, 764 N.W.2d at 107. Instead, the hearing was continued at the subject's request so he could complete a voluntary course of inpatient treatment and, after he did, the petition was dismissed. *Id*.; *see* § 71-925(3). The Court held that the subject had not been "committed" because no hearing had been held and no treatment order had ever been entered—so, the facts of the case did not require the Court to consider what must be *in* a treatment order for a subject to be "committed." *See id*. at 110.

> The board shall inquire of the subject whether he or she admits or denies the allegations of the petition. If the subject admits the allegations, the board shall proceed to enter a treatment order . . . . If the subject denies the allegations of the petition, the board shall proceed with a hearing on the merits of the petition.

*Id*. It is, at that point, the state's burden to prove by clear and convincing evidence that the subject is mentally ill and dangerous *and* that neither voluntary hospitalization nor other treatment alternatives less restrictive than inpatient or outpatient treatment[5] are available and would suffice. § 71-925(1).

The subject of the petition is entitled to written notice of the hearing. *See* § 71-944. The subject has the right to counsel and the right to retain their own mental health professionals for an independent evaluation. *See* § 71-945; § 71-948, *see also* § 71-946; § 71-949. The subject shall appear personally and has the right to testify and present evidence. *See* § 71-952; *see also* 71-953 (right to compulsory process); § 71-954 (right to confront witnesses). The rules of evidence apply at the hearing. § 71-955.

If the board finds that the subject is not mentally ill and dangerous, obviously, the petition is dismissed and the subject discharged. § 71-925(2). If the subject is mentally ill and dangerous but voluntary treatment will suffice, then the board may dismiss the petition and discharge the subject *or* suspend the proceedings for 90 days so the subject can seek treatment. § 71-925(3). But

---

[5] "Outpatient treatment" is "treatment ordered by a mental health board directing a subject to comply with specified outpatient treatment requirements" including medication, reporting to a mental health professional or treatment facility for treatment or monitoring, or individual or group therapy or other programs. § 71-909.

> [i]f the subject admits the allegations of the petition or the mental health board finds that the subject is mentally ill and dangerous and that neither voluntary hospitalization nor other treatment alternatives less restrictive of the subject's liberty than inpatient or outpatient treatment ordered by the board are available or would suffice . . . the board shall, within forty-eight hours, (a) order the subject to receive outpatient treatment or (b) order the subject to receive inpatient treatment. *If the subject is ordered by the board to receive inpatient treatment, the order shall commit the subject to the custody of the Department of Health and Human Services for such treatment.*

§ 71-925(4) (emphasis supplied). "If the mental health board finds the subject to be mentally ill and dangerous and commits the subject to the custody of the Department of Health and Human Services to receive inpatient treatment, the department shall secure placement of the subject in an appropriate inpatient treatment facility to receive such treatment." § 71-927. The subject of a treatment order may appeal to the district court. § 71-930.

A treatment order must be made in writing. § 71-756. Any treatment order entered by a mental health board must include "directions for (a) the preparation and implementation of an individualized treatment plan for the subject and (b) documentation and reporting of the subject's progress under such plan." § 71-931(1). The subject is entitled to know what's in the plan and what they must do to meet its requirements, and is also entitled to notice from the mental health board "when the mental health board has changed the treatment order or has ordered the discharge of the subject from commitment." § 71-931(4)-(5). The treatment provider designated by the mental health board

to prepare and oversee the treatment plan shall provide periodic reports to the mental health board of the subject's progress, and

> [w]ith respect to a subject ordered by the mental health board to receive inpatient treatment, such initial report shall be filed with the mental health board for review and inclusion in the subject's file and served upon the county attorney, the subject, the subject's counsel, and the subject's legal guardian or conservator, if any, no later than ten days after submission of the subject's individualized treatment plan. With respect to each subject committed by the mental health board, such reports shall be so filed and served no less frequently than every ninety days for a period of one year following submission of the subject's individualized treatment plan and every six months thereafter.

§ 71-932. A provider of outpatient treatment pursuant to a mental health board order shall report to the board and the county attorney if the subject is non-compliant, the treatment plan isn't working, or there's been a change in the subject's condition. § 71-933(1).

Upon the filing of a periodic report under § 71-932, the subject or subject's guardian may ask for a review hearing "to seek from the board an order of discharge from commitment or a change in treatment ordered by the board." § 71-935(1). And the board may hold a review hearing at any time on request or its own motion. *Id*. If cause no longer exists for treatment or a less restrictive alternative exists, the board must discharge the subject. § 71-935(2). In addition, the administrator of a treatment facility may decide if an involuntary patient in that facility may be safely discharged or permitted leave, but must "immediately notify the mental health board of the judicial district from which such patient was committed." § 71-936; *see also* § 71-937

- 10 -

("[a] mental health board shall be notified in writing of the release by the treatment facility of any individual committed by the mental health board" and "[s]uch notice shall immediately be forwarded to the county attorney").

If "any individual committed by the mental health board" is released from a treatment facility, the board may conduct a hearing to determine whether the subject is fit for release. § 71-937. And the board may also hold a hearing "to determine whether a person who has been ordered by the board to receive inpatient or outpatient treatment is adhering to the conditions of his or her release from such treatment." § 71-938.

If a person ordered to receive treatment at a treatment facility or program is absent without authorization, the board and Nebraska State Patrol are notified, and a warrant is issued for the person's arrest and detention. § 71-939. If such a person is found in another state, the Governor may demand their return. § 71-942. And if a person "who is absent without authorization from a treatment facility or program for persons with mental illness or substance dependence to which such person has been committed under the laws of the other state" is found in Nebraska, the Governor may issue a warrant authorizing the person's return to the other state. § 71-940.

Finally, the Court notes that the Act contains a provision permitting a subject to have their right to possess a firearm restored by petitioning the mental health board. Specifically,

> Upon release from commitment or treatment, a person who, because of a mental health-related commitment or adjudication occurring under the laws of this state, is subject to the disability provisions of 18 U.S.C. 922(d)(4) and (g)(4) or is disqualified from obtaining a certificate to purchase, lease, rent, or receive transfer of a handgun under section [Neb. Rev. Stat. §] 69-2404 or obtaining

> a permit to carry a concealed handgun under the Concealed
> Handgun Permit Act may petition the mental health board to
> remove such firearm-related disabilities.

§ 71-963(1). The petitioner must show, by clear and convincing evidence, that
they are not likely to be dangerous to the public and that relief wouldn't be
contrary to the public interest. § 71-963(2)(a)(i). And

> If a petition is granted under this section, the commitment or
> adjudication for which relief is granted shall be deemed not to have
> occurred for purposes of section 69-2404 and the Concealed
> Handgun Permit Act and, pursuant to section 105(b) of Public Law
> 110-180, for purposes of 18 U.S.C. 922(d)(4) and (g)(4).

§ 71-963(5).

The takeaway from all of that is that when the Act uses the word
"commit," it does so in reference to involuntary *confinement* of the subject in a
mental institution. And that makes sense, because the common definition of
the word "commitment" relevant to this context is "[t]he act of confining a
person in a prison, mental hospital, or other institution; esp., the sending of a
person to jail, by warrant or order, for crime, contempt, or contumacy."
*Commitment*, Black's Law Dictionary (11th ed. 2019); *see State v. Drake*, 311
Neb. 219, 234-35 (2022); *United States v. McMichael*, 350 F. Supp. 3d 647, 653
(W.D. Mich. 2018); *see also Commitment Order*, The New Oxford American
Dictionary (2d ed. 2005) ("an order authorizing the admission and detention of
a patient in a psychiatric hospital").

The Court is aware that the U.S. District Court for the Northern District
of Iowa reached a different conclusion in *B.H.*, 466 F. Supp. 2d at 1147-49. But
that decision is not inconsistent with this one: rather, Iowa law is different. As

the Court explained in *B.H.*, after its deep dive into Iowa's involuntary hospitalization law,

> a person who is ordered to undergo outpatient treatment in Iowa is clearly committed to a mental institution, as contemplated in 18 U.S.C. § 922(g)(4). A formal order of commitment is a prerequisite to outpatient treatment, outpatient treatment continues only while the respondent is under such an order and the treatment does not end absent a court order terminating the commitment.

*B.H.*, 466 F. Supp. 2d at 1148. But as explained above, under Nebraska law, commitment to a mental institution *or* involuntary outpatient treatment are among the options available to the mental health board after the subject's initial evaluation, and "commitment" is a consequence, not a prerequisite. So, while it may be that § 922(g)(4) "only requires commitment *to* a mental institution, not commitment *in* a mental institution," *B.H.*, 466 F. Supp. 2d at 1147, under Nebraska law a subject is always "committed" *in* an institution.

The Court again notes, to be fair, that the Board's order that the defendant receive outpatient treatment did describe that command as a "commitment." Filing 54-4 at 1. But the Court is not convinced that loose use of language can bear the weight of placing the defendant in a prohibited category for purposes of § 922(g). The Court is, after all, guided by Nebraska *law* on this point, not a single document authored by a regional mental health board. *See Dortch*, 363 F.3d at 785. It's also clear that to be "committed" under § 922(g)(4), the state statutory process must be followed. *See Dortch*, 363 F.3d at 785-87; *see also Hansel*, 474 F.2d at 1122-23. Had the defendant been institutionalized in *violation* of state law and denied the opportunity to seek review or relief from that proceeding, "due process may well prevent use of his prior commitment to a mental institution from serving as the predicate

element of his § 922(g)(4) conviction." *Dortch*, 363 F.3d at 787; *but cf. United States v. McIlwain*, 772 F.3d 688, 698 (11th Cir. 2014) (denying collateral attack on state court commitment order). Which is not to say that the board did anything unlawful in the defendant's case—it's just to point out that the Act, and not the mental health board, defines the scope of the board's authority and the effect of its orders.

And construing the statute more broadly, given Nebraska law, would implicate constitutional concerns. When § 922(g)(4) and the Nebraska Mental Health Commitment Act are taken together, it's a fair question whether some subjects of proceedings under the Act would have fair notice of the demands of § 922(g)(4) if orders other than involuntary confinement—*i.e.* "commitment" under the Act—were held to satisfy it. *See generally Wooden v. United States*, 142 S. Ct. 1063, 1082 (2022) (Gorsuch, J., concurring). (Remember, the mental health board can order all sorts of involuntary treatment other than reporting to a mental health facility—it can include medication, therapy, or "other programs." § 71-909.) And the more expansively § 922(g)(4) is read to apply to the various outcomes available under the Act, the more some of those applications would require constitutional scrutiny. *See generally N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, No. 20-843, 2022 WL 2251305, at *39 (U.S. June 23, 2022) (Kavanaugh, J., concurring).

## CONCLUSION

The Court concludes that on the undisputed facts, the defendant was neither "adjudicated as a mental defective" nor "committed to a mental institution" within the meaning of § 922(g)(4). Having reached that conclusion, the Court does not reach the constitutional questions that would be posed by a broader reading of the statute. For the sake of completeness, the Court notes that *had* the defendant been committed to a mental institution, whether he

*knew* of his prohibited status (as required by *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019)), would be a question of fact for the jury, not a question of law for the Court, and the Court adopts the Magistrate Judge's findings and recommendation to that extent.

The Court acknowledges the disturbing circumstances that led to the defendant's mental health board proceeding. *See* filing 62. But whether the defendant should be permitted to possess firearms at this point, or whether there is some other lawful means to prevent him from possessing firearms, is not the question here—rather, it's whether he violated federal law by doing so. The Court concludes that he did not. Accordingly,

IT IS ORDERED:

1. The defendant's objection (filing 71) is sustained in part.

2. The Magistrate Judge's findings and recommendation (filing 64) are adopted in part.

3. The defendant's motion to dismiss (filing 53) is granted.

4. The indictment (filing 1) is dismissed.

Dated this 1st day of July, 2022.

BY THE COURT:

John M. Gerrard
United States District Judge

- 15 -